GRAY *v.* BROWN *et al.*

(*Knoxville,* September Term, 1948.)

Opinion filed December 11, 1948.

Rehearing denied March 11, 1949.

J. F. WHELESS, of Chattanooga, for plaintiffs, NEAL P. BROWN *et al.*

WHITAKER, HALL & HAYNES and JOE HUNTER, all of Chattanooga, for defendant Charles N. Gray.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The appeal presents two consolidated cases, one by Mrs. Neal F. Brown for personal injuries, and the second by Neal F. Brown, her husband, for loss of services and medical expenses, against Charles N. Gray, the owner of the taxicab in which Mrs. Brown received her injuries while riding as a passenger. A nonsuit was taken as to the Defendant J. N. Skelf, the driver of the taxicab. To dispose of the case, we find it unnecessary to detail the complicated pleas which followed the filing of the declaration. The result of the litigation in the Circuit Court was a verdict for Mrs. Brown for $2,000.00, and for Mr. Brown for $1,000.00. The judgments were approved by the trial judge and on appeal, affirmed by the Court of Appeals.

During the trial, motions were seasonably made for directed verdicts for want of material evidence of negligence, at the close of the Plaintiff's proof and renewed at the close of all the proof. The action of the trial judge in overruling these motions was made a ground for motion for new trial, and assigned as error in the Court of Appeals, and renewed here in petition for certiorari. We granted the petition for *certiorari,* have heard argument, and the cases are here for our disposition.

The pertinent facts are these: At about 12:30 a. m., on the morning of April 6, 1944, Mrs. Brown and her niece took the taxicab involved, at the bus station in Chattanooga. The taxidriver, Skelf, put the ladies' baggage in the cab and closed the right rear door of the cab. The cab was driven, first to the home of the niece on Vine Street. The niece opened the left rear door of the cab and alighted. The driver assisted her with her baggage, accompanied her to the porch of her home, closed the left rear door of the cab, and proceeded on his way to the home of Mrs. Brown.

Shortly after this, the right rear door of the cab flew open. Mrs. Brown being short of stature and arms, could not, while properly seated, reach the handle of the open door to swing it shut. Although as a passenger, she was under no duty to do so, and there was no danger to herself which made it necessary, Mrs. Brown partially rose from her seat, leaned out of the rapidly moving cab to reach the handle of the door, and in so doing lost her balance, was thrown from the cab and received the injuries for which she sued. She said on the stand:

". . . the door came open *and I went to reach it,* but never did get hold of the door and it pulled me out and I hung on to the door." (Italics ours.)

Mrs. Brown testified further on cross-examination:

"Q. Now you say this door came partially opened and before it had the opportunity, with the wind blowing against it as you have stated, at forty miles an hour, that it hesitated at such an angle that you could reach over and grab it? A. When the door came open all I know, *I reached and grabbed it and it pulled me out.* That's all I know.

"Q. And the door wasn't completely open, then, when you grabbed it? A. It was coming open, and I reached to grab it and it jerked me out. That's all I know.

. . . . . . .

"Q. Well, you stated you felt the wind hit your face because the door came open while you were on the viaduct. A. It might have been open and just halfway all the time, but when it came open then it gave me a linge, entirely open.

"Q. And when it gave you a lunge you lunged at the door for the purpose of closing it? A. I lunged because it pulled me out, just took me out.

"Q. Well, you wanted to close it, didn't you? A. I was going to close it." (Italics ours.)

Further examination of Mrs. Brown disclosed that what she meant by this confused statement was that she could not reach the handle of the opened door without rising from her seat; that she rose from her seat and leaned out to reach the handle; that she lost her balance; that as she was falling or after she had fallen from the cab, she did grasp the handle of the door and was dragged along the highway until the driver stopped the cab in answer to her screams. The driver saw nothing of what occurred until after he stopped the cab so that Mrs. Brown's account is without support or contradiction in the record.

█ The following additional facts are undisputed: That the right rear door was not mechanically defective; that the driver securely closed the door at the start of the trip and that no one touched the door thereafter before the accident. Under this undisputed evidence, since the opening of the door is unexplained, the opening of the door raises no presumption of negligence against either the driver or the owner of the cab. *Everett* v. *Evans,* 30 Tenn. App., 450, 207 S. W. (2d) 350.

█ Mrs. Brown testified that the cab was driven at high speed after she had fallen out of it, but to be actionable, the negligence of the carrier must be antecedent to or concurrent with the accident, and more important, the negligence must be an efficient and actuating cause of the injury. cf. 13 C. J. S., Carriers sec. 755, Page 1415; *Grigsby & Co.* v. *Bratton,* 128 Tenn. 597, 163 S. W. 804; *Letner* v. *State,* 156 Tenn. 68, 299 S. W. 1049, 55 A. L. R. 915. The owner and operator of the cab are not insurers (*Knoxville Cab Co.* v. *Miller,* 176 Tenn. 88, 138 S. W. 2d 428). and the right of recovery is dependent on affirmative proof of actionable negligence on the part of the Defendants.

█ The attempt of Mrs. Brown to close the door of the fast-moving cab was the proximate, procuring cause (*Grigsby & Co.* v. *Bratton, supra*) of her injury. So far as the evidence shows, she might have remained in her seat, where as a passenger she belonged, with entire safety to herself. There is no suggestion in the evidence, that the opening of the door created a sudden peril to Mrs. Brown, which for her own safety and protection, she had to meet by closing the door. It was the duty of the driver as the operator of the cab, to close the door, and it was the voluntary and unnecessary departure of Mrs. Brown from her role as passenger and her inter-

ference with the operation of the cab, which exclusively and proximately caused her injuries.

A passenger, whether in a common carrier or private conveyance, is under the duty of exercising reasonable care for her own safety (*Pennsylvania R. Co.* v. *Rogers,* 3 Cir., 244 F. 76, 156 C.C.A., 504), so that the decision of *Amason* v. *Ford Motor Co.,* 5 Cir., 80 F. (2d) 265, is applicable. In that case, a passenger in a private automobile, while attempting to open and close the right front door of a rapidly moving automobile, was thrown or fell from the car in which he was riding, and was run over and killed by another automobile. The Court held, in dismissing the suit brought by his widow:

". . . it is clear that the sole proximate cause of the accident was the negligence of the deceased in attempting to open and close the door when the car was running at a rapid rate.". *Amason* v. *Ford Motor Co.,* 5 Cir., 80 F. (2d) 265, 266. The same rule of law controls here.

In *Newton* v. *Wetherby's Adm'x.,* 287 Ky. 400, 153 S.W. (2d) 947, 948, 949, an 11-year-old boy was thrown from an automobile moving at speed above the legal limit and injured. He was denied recovery against the estate of Dr. Wetherby, driver of the car, and his action dismissed, the Court saying:

"Nor do we think the evidence was sufficient to establish that Dr. Wetherby knew or should have known, that the car door was insecure. The appellant said it was making noises and that he saw a little crack and knew that it was not fastened on the first latch—he imagined Dr. Wetherby heard it. This is insufficient to warrant the presumption that Dr. Wetherby did hear the noise or that, if he heard it, he realized that it was from the door. The plaintiff must prove his case and may not

rely on speculation or unjustifiable inferences to make one out for him.

"But though it be assumed that Dr. Wetherby was negligent, it seems clear that such negligence was not the proximate cause of appellant's injuries. When an independent act intervenes between a defendant's negligence and the injury sustained, such act breaks the causal connection between the negligence and the damage. And where the negligence does nothing more than furnish a condition or give rise to the occasion by which an injury is made possible it cannot be made the basis of a recovery if there intervenes between it and the injury a distinct, successive, unrelated, efficient cause of the injury. If no danger existed in the condition except by reason of the independent cause such condition was not the proximate cause. Proximate cause is that which, in a natural and continual sequence, unbroken by any new, independent cause produces the injury, and without which the injury would not have occurred. (Citing cases.) Any negligence of which Dr. Wetherby might have been guilty did nothing more than furnish a condition or occasion connected with the accident. No danger existed, because the door was latched and would have stayed latched, although it might have been making noise and it was only the independent act of appellant in attempting to open and close the door which caused the accident, and an independent act which Dr. Wetherby was under no duty to anticipate.

"The identical question was presented for decision in *Huebner* v. *Pischer et al.*, 232 Wis. 600, 288 N. W. 254, 256, except that the plaintiff apparently was an adult. There, the court said, 'Putting her hand on the handle of the door, obviously for the purpose of opening the door and releasing her coat, which resulted in the door swing-

ing wide open and pulling her out, was the sole cause of her injury. .. . . . Had she not put her hand on the door handle the accident would not have happened. We think it clear, therefore, that the trial court should have granted defendant's motion for a directed verdict . . . .'.

"Our conclusion is the same as that of the Wisconsin court, that appellant's action in opening the door was the sole cause of the accident. Neither Dr. Wetherby's failure to see that the door was tightly closed nor his speed of 50 miles per hour, though such acts be deemed negligent, was the proximate cause of the accident since the accident was not the natural and probable consequence of the negligence nor one which might reasonably have been anticipated."

In view of our disposition of the case it is unnecessary for us to decide whether, at the time of the accident, the relation of master and servant existed between Defendant Gray and the driver of the cab. As we appraise the effect of Mrs. Brown's testimony, her negligence was not contributory but was the sole, proximate and efficient cause of her injuries. The motion for peremptory instruction made at the end of Defendant's proof should have been sustained.

Reversed and remanded for entry of a judgment consistent with this opinion. The Respondents will pay the costs.

All concur.